UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GILLETTE AIR CONDITIONING COMPANY, | § § § | |
| Plaintiff/Counter-Defendant, | § | |
| v. | § § | CIVIL ACTION NO. |
| TIMOTHY D. SCHEUTZOW and FIELD FUSION, INC., | § § § | SA-10-CV-0548 FB (NN) |
| Defendants/Counter-Plaintiffs. | § § | |

## REPORT AND RECOMMENDATION

TO:   **Honorable Fred Biery**
      **Chief United States District Judge**

This report and recommendation addresses plaintiff Gillette Air Conditioning Company's motion to enforce settlement agreement.[1] The subject matter of this dispute is complex, but the question before the court—whether to enforce a settlement agreement—is straightforward. The settlement agreement reflects the usual result of a mediated settlement—neither party obtains everything the party wants, but each party walks away with more than it had. After considering Gillette's motion, defendant Timothy D. Scheutzow's response, the settlement agreement and the applicable law, I recommend enforcing the settlement agreement, ordering the parties to comply with

---

[1]Docket entry # 73.

the agreement, and dismissing this case as settled by the parties.

**Nature of the case**. Gillette is local company specializing in heating, ventilation, and air conditioning. Gillette sued Scheutzow and a corporate entity named Field Fusion, Inc., seeking declaratory judgment to establish ownership of a computer software copyright. Gillette hired Scheutzow to develop the computer software to perform certain key functions for Gillette's business. The parties call the program "Field Fusion software."

In time, Field Fusion, Inc., was formed to market and sell the Field Fusion software to other heating, ventilation and air conditioning companies. When marketings efforts failed and the parties's relationship soured, Gillette terminated Scheutzow and demanded the return of all copies of the Field Fusion software. Gillette later determined that Scheutzow sought to sell Field Fusion software. Gillette filed this lawsuit against Scheutzow and Field Fusion, Inc., asserting copyright infringement, seeking declaratory judgment that Gillette owns the software, and alleging conversion of its property.

**Background**. The history of the case is protracted and complicated by the fact that both Scheutzow and Field Fusion, Inc. are unrepresented by counsel. Initially, Scheutzow attempted to answer on behalf of himself and Field Fusion, Inc.[2] He also

---

[2]Docket entry # 9 (Scheutzow's motion for an extension of time to answer on behalf of himself and Field Fusion, Inc.).

2

attempted to assert a counterclaim for tortious interference with Field Fusion, Inc.'s business.[3] I advised Scheutzow that he may represent himself, but he may not represent Field Fusion, Inc.[4] I set a deadline for Field Fusion, Inc. to obtain counsel. I warned Field Fusion, Inc. that failing to obtain counsel could result in a default judgment.

When Field Fusion, Inc. failed to appear by counsel, I struck the pleadings Scheutzow filed on Field Fusion, Inc.'s behalf.[5] The clerk entered a default judgment against Field Fusion, Inc.[6] At my direction,[7] Scheutzow amended his answer. In the amended answer, Scheutzow added counterclaims for tortious interference with his ability to profit from the Field Fusion software, defamation, and deceptive trade practices.[8]

Because the pleadings indicated this case could be resolved with the assistance of a mediator specializing in business disputes, I appointed attorney Don Philbin as a

---

[3]Docket entry # 13.

[4]Docket entry # 16.

[5]Docket entry # 25.

[6]Docket entry # 26.

[7]Docket entry # 27.

[8]Docket entry # 29.

mediator.[9]  After the parties failed to mediate, I set a deadline for a mediation.[10]  To ensure mediation efforts were not undermined by unequal bargaining power, I appointed attorney Ricardo Cedillo to represent Scheutzow for the mediation.

The parties mediated twice.  At the first mediation, the parties entered into a Compromise Settlement Agreement and Release Arising During Mediation (the settlement agreement).  The parties continued to work, with mediator Philbin's assistance, on resolving remaining issues—in particular, the definition of net profit and responsibility for software repair.  After the first mediation, Scheutzow learned that Gillette had not filed federal income tax returns for Field Fusion, Inc., for 2009 and 2010.

The parties mediated a second time, but failed to resolve the two remaining issues.  I held a status hearing the next day.  Scheutzow stated that he would not have signed the settlement agreement if he had known Gillette did not file the tax returns.  Scheutzow indicated the case had not settled.  Gillette stated that it would seek enforcement of the settlement agreement.  I released attorney Cedillo from further representation.

Gillette formally moved to enforce the settlement agreement.  Scheutzow responded to the motion.  The motion is ripe for the court's consideration.

---

[9]Docket entry # 42.

[10]Docket entry # 62.

**The court's authority to enforce a settlement agreement**. "Federal courts have the inherent power to enforce settlement agreements entered into by the parties [litigating] in a pending case, to determine compliance with procedural prerequisites, and to determine when, if ever, a party may repudiate a contractually binding settlement agreement."[11] Whether a settlement agreement is valid "is determined by reference to state substantive law governing contracts generally."[12]  "[S]ince the alleged agreement was negotiated and to be performed in Texas, the settlement agreement entered by the parties will be interpreted under Texas law."[13]

**Legal principles applicable to settlement agreements**. "[P]arties are free to settle the lawsuit without court oversight and are bound by their settlement agreement as by any contract."[14]  Previously, the Fifth Circuit indicated that state contract law applies when considering whether to enforce a settlement agreement unless there is a "strong federal interest" favoring federal law.[15]  Here, no strong federal interest exists in

---

[11]*White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986). *See Ho v. Martin Marietta Corp.*, 845 F.2d 545, 548 (5th Cir. 1988) ("The district court has jurisdiction over the settlement because the settlement is the final adjudication between the parties of the claims involved in the suit.").

[12]*Kupcho*, 792 F.2d at 529.

[13]*Matter of Omni Video*, 60 F.3d 230, 232 (5th Cir. 1995).

[14]*Ibarra v. Tex. Emp't Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987) (citations omitted).

[15]*Omni Video*, 60 F.3d at 232. *But see Kupcho*, 792 F.2d at 529 ("Whether a settlement agreement, thus tested under state law, has been accepted by a federal court

the validity of a settlement agreement entered into to resolve claims of copyright infringement and state-law conversion, defamation, and deceptive trade practices. Federal copyright law does not address the validity of settlement agreements. The court further instructed that where a settlement "agreement was negotiated and to be performed in Texas, the settlement agreement entered by the parties will be interpreted under Texas law."[16]

A mediated settlement agreement is a written contract.[17] In Texas, "[s]ettlement agreements are governed by the law of contracts."[18] "Binding and enforceable contracts are formed when an offer is made and accepted, when there is a meeting of the minds,

---

and properly incorporated into a valid and enforceable judgment is purely a matter of federal procedure."). The settlement agreement in this case has not been incorporated into a valid and enforceable judgment.

[16] *Omni Video*, 60 F.3d at 232. *Accord TechRadium v. Edulink Sys.*, No. H–10–1887, 2011 WL 2709029, at * 2 (S.D. Tex. July 12, 2011) (writing in a patent case where one of the parties sought to avoid a settlement agreement: "In cases based on federal law, the Fifth Circuit applies state law to the enforcement of settlement agreements unless there is a 'strong federal interest' favoring federal law. *Omni Video*, 60 F.3d at 232 (determining that state law applies to the enforceability of a settlement in a bankruptcy case). Neither party argues that such a federal interest exists in this case. The parties agree that Texas law applies.").

[17] *See Wright v. Wright*, 280 S.W.3d 901, 915 (Tex. App.—Eastland 2009, no pet.).

[18] *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.–Fort Worth 2009, no pet.).

and when the terms are sufficiently certain to define the parties' obligations."[19]  "In order for a court to enforce a contract, the parties must agree to the essential terms of the contract.  The essential terms for a settlement agreement are the amount of compensation and the liability to be released."[20]

<u>Meeting of the minds</u>.  A meeting of the minds is evidenced by the language of the settlement agreement and the parties' signatures on the agreement.  The pertinent language is listed below:

> The parties hereto agree to settle all claims and controversies between them, whether asserted or assertable in this case.[21]

> The parties acknowledge that bona fide disputes and controversies exist between the parties, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies the parties hereto desire to

---

[19]*Tex. Disposal Sys. Landfill v. Waste Mgmt Holdings*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied).  *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.–Fort Worth 2009, no pet.) ("[T]he requirements of a contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.").

[20]*Disney v. Gollan*, 233 S.W.3d 591, 595 (Tex. App.—Dallas 2007, no pet.).  *See Anderton v. Schindler*, 154 S.W.3d 928, 932 (Tex. App.–Dallas,2005, no pet.) (stating that a settlement "agreement is enforceable if it is complete within itself in every material detail, and contains all of the essential elements of the agreement"); Tex. Civ. Prac. & Rem. Code § 154.071(a). ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract.").

[21]Docket entry # 73, ex. A, ¶ 2.

compromise and settle all claims and causes of action of any kind…[22]

Each signatory to this Agreement has executed it freely and without duress, after having consulted with, or having had the opportunity with the attorneys of such person's choice.[23]

The foregoing language reflects a meeting of the minds.

<u>Essential terms</u>. The settlement agreement details the agreement's essential terms. The following language contains the essential terms:

Gillette hereby assigns to Scheutzow all of Gillette's right, title and interest in Field Fusion, Inc. and to all copyrights, registrations and applications therefor, computer software, all assignable licenses in same, and other technical information and the like in the software…that is the product of the relationship between Scheutzow and Gillette used, copyrighted, or licensed by Gillette in connection with the relationship between Gillette and Scheutzow as well as any and all rights to sue for past infringement or misappropriation of Scheutzow's or Gillette's intellectual property, but excluding a non-exclusive, paid up enterprise license in and unlimited right to use such software in Gillette's business….[24]

These terms are essential because this dispute is about ownership of the copyright for Field Fusion software.[25]

The agreement also addresses consideration as evidenced by the following

---

[22]*Id.* at ¶ 4.

[23]*Id.* at ¶ 9.

[24]*Id.* at ¶ 3(a).

[25]Docket entry # 48, pp. 5-7 (Gillette's first amended complaint asking the court to declare that Gillette owns the copyright for Field Fusion)

8

language:

> …Scheutzow will provide current and future released versions of the software to Gillette at no additional cost and without implementation or support; Scheutzow will simply deliver to Gillette machine readable copies of the released software in the form of a registered disk with installation instructions;
>
> …Scheutzow will pay Gillette 40% of the net profit generated by the sale, license and use of the software up to an aggregate cap of $300,000; the final settlement document will provide for verification by Gillette of the net profit amount referenced in this Agreement…[26]

Although the parties contemplated adding a provision about how "net profit" would be calculated, such provision is not necessary to the agreement.

To enforce an agreement, terms must be sufficiently certain to define the parties' obligations. While the term "net profit" may not hold precise meaning for software developers, heating and air conditioning specialists, lawyers, or judges, the term has a generally accepted meaning for bookkeepers and accountants and those are the types of people who determine "net profit." Bookkeepers and accountants follow generally accepted accounting principles in maintaining corporate financial records. Generally accepted accounting principles obviate the need for a specific method for "net profit" in a settlement agreement. Such a provision is not an essential term because the use of the term "net profit" is sufficiently certain to define the parties' obligations. Because the agreement reflects a meeting of the minds and contains essential terms, the settlement

---

[26]Docket entry # 73, ex. A, ¶ 3(b)-3(c).

agreement is enforceable.

**Scheutzow's reason for setting aside the agreement**. Scheutzow seeks to set aside the settlement agreement because he did not know Gillette had not filed income tax returns for Field Fusion, Inc. for the years 2009 and 2010. Scheutzow asserted that "it was generally accepted during the first mediation session that both the software and Field Fusion, Inc. was in good standing free from any hindrances that would prohibit [him] from moving forward with [his] company and software."[27] Scheutzow contends the settlement agreement is unenforceable because Gillette committed fraud during the execution of the settlement agreement "when [Gillette] knew full well that Field Fusion, Inc. was out of compliance with both the Federal Internal Revenue Service as well as both Ohio and Texas taxing authorities."[28] He asserted, "At no time did I have any information that would allow me to have full understanding of the financial position of the company."

In essence, Scheutzow claims Gillette induced him to enter into the settlement agreement by falsely representing Field Fusion, Inc.'s status.[29] Where a party relies on

---

[27]Docket entry # 76, ¶ 5.

[28]*Id*. at ¶ 6.

[29]*See Formosa Plastics Corp. USA v. Presidio Engineers and Contractors*, 960 S.W.2d 41, 46 (Tex. 1998) ("Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. As a rule, a party is not bound by a contract procured by fraud.").

10

fraudulent inducement, that party must prove it entered into a binding agreement based on the other party's false representation.³⁰ Scheutzow though did not complain that Gillette misrepresented Field Fusion Inc's financial status; he complained only that Gillette did not disclose information that in retrospect Scheutzow wished he knew.

Despite his reliance on Field Fusion's financial position, Scheutzow made no showing that information about Field Fusion's tax-return status was an essential term of the settlement agreement. The procedural rules permit litigants to seek discovery of matters relevant to disputed issues. In this case, the scheduling order required the parties to complete discovery by April 1, 2011.³¹ The first mediation was conducted on April 7, 2011—after the discovery deadline. Thus, the parties entered the mediation having had the benefit of the discovery period.

Although proceeding pro se prior to the mediation, Scheutzow was aware of the availability of discovery. On September 2, 2010, Scheutzow emailed Gillette's attorney and stated, "I have a draft set of interrogatories and request for production of documents ready."³² He also understood the importance of the discovery deadline,

---

³⁰*See Formosa Plastics Corp. USA*, 960 S.W.2d at 47-48 (Tex. 1998) ("A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.").

³¹Docket entry # 33, ¶ 6.

³²Docket entry # 39, p. 4.

11

asserting that "we must adhere to the schedule."[33] Yet he complained on October 18, 2010 that he had not seen "any federal tax filings, state tax filings, current financials, or loan repayment."[34]

Despite the complaint, Scheutzow never sought the court's assistance to compel Gillette to produce information about Field Fusion's financial status. Notably, he has not complained that he had sought discovery on those matters and that Gillette failed to produce the information. Without complaint, the court can conclude that Scheutzow did not seek such discovery.

Moreover, Scheutzow demonstrated that he could obtain the information on his own. He reported that after the first mediation, he called the Internal Revenue Service and discovered that the federal income tax returns had not been filed. Had the status of the Field Fusion, Inc's tax filings been important, Scheutzow could have discovered that information. As the asserted owner of Field Fusion, Inc., Scheutzow's assumption that Gillette would pay Field Fusion, Inc.'s income tax is unreasonable. Despite any arrangements about the day-to-day business of Field Fusion, Inc., Scheutzow was the majority shareholder and President of Field Fusion, Inc. It is too late to complain about income tax returns.

---

[33]*Id.*

[34]Docket entry # 29, ¶ 12.

The focus of this dispute has always been the ownership of the Field Fusion software. Scheutzow has always insisted that he is the exclusive owner of the Field Fusion software as the designer, author and publisher of the software.[35] The settlement agreement gives Scheutzow what he sought—ownership of the Field Fusion software and control of Field Fusion, Inc. To now attempt to refocus the dispute to Field Fusion's tax returns status is disingenuous.

**Recommendation**. Despite lacking funds to retain his own attorney, Scheutzow had the benefit of the best the legal profession offers, both in terms of a legal advocate and a mediator. The settlement agreement gave Scheutzow what he sought— ownership of the Field Fusion software and control of Field Fusion, Inc. He now seeks to avoid a collateral consequence of his agreement. That Field Fusion may owe penalties for late tax filings does not negate an enforceable agreement. "Litigants may not disavow [a settlement agreement] made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration."[36] I recommend granting Gillette's motion to enforce the settlement agreement (docket entry # 73), enforcing the settlement agreement, ordering the parties to comply with the agreement, and dismissing this case as settled by the

---

[35]Docket entry # 29, ¶¶ 14 & 23.

[36]*Kupcho*, 792 F.2d at 528.

13

parties.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[37] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[38] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of

---

[37] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[38] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[39]

**SIGNED** on December 5, 2011.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[39]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).